**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**
**No. 09-cv-00100-ADM-SRN**

| | |
|---|---|
| CYNTHIA MARK, on behalf of herself and all others similarly situated, | |
| Plaintiff, | **UNITED STATES OF AMERICA'S MEMORANDUM IN DEFENSE OF THE CONSTITUTIONALITY OF THE FAIR DEBT COLLECTION PRACTICES ACT** |
| vs. | |
| J.C. CHRISTENSEN & ASSOCIATES, INC., | |
| Defendant. | |

## INTRODUCTION

Pursuant to 28 U.S.C. § 2403, the United States of America, Intervenor, hereby

submits this brief defending the constitutionality of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 et seq., against the constitutional challenges presented by

J.C. Christensen & Associates, Inc., in its Motion for Judgment on the Pleadings.

## FACTUAL AND PROCEDURAL HISTORY

On January 15, 2009, Plaintiff Cynthia Mark filed a class-action suit in the District

of  Minnesota against Defendant J.C. Christensen & Associates, Inc. ("JCC").  See Dkt.

#1.  Plaintiff alleged that between June 2008 and October 2008, she received "upwards of

a dozen" answering machine messages from debt collector JCC regarding an alleged debt

Mark owed to a medical institution.  Mark alleged that none of the messages stated the

identity of the caller or the fact that the calls were from a debt collector.  For example, one of the messages stated:

> Hi Cindy, this is Eva, can you call me quick when you get this message.
> My office number is 866-565-1399.

Another message stated:

> Cynthia this is Nadine Gluck, please give me a call at my office I have a
> quick question for you here.  My number is 866-552-0363.

Plaintiff alleged that the messages violated the FDCPA, 15 U.S.C. §§ 1692d(6) and 1692e(11), in that they disclosed neither JCC's identity nor the fact that JCC was a debt collector attempting to collect a debt.

Defendant admitted in its February 16, 2009, Answer that it is a debt collection agency and that it left messages "similar to those alleged . . . on or about the dates alleged."  See Dkt. #2 at ¶ 11.  Defendant claimed, however, that the messages in question were not "communications" for purposes of the FDCPA.  See id. at ¶ 2. Defendant also raised as an affirmative defense that "Plaintiff's claim that JCC may not leave simple voice mail messages to consumers may be unconstitutional, in that it would violate JCC's right to free speech."  Id. at ¶ 25.

On February 27, 2009, Defendant filed a Rule 12(c) "Motion for Judgment on the Pleadings/Claim of Unconstitutionality" and, on March 23, 2009, a memorandum in support of that motion.  See Dkt. ## 6, 10.  In the memorandum, Defendant asserted that the FDCPA did not apply to the communications at issue, and also asserted that making the §§ 1692d(6) and 1692e(11) disclosures during a recorded message would have opened

the door to liability under § 1692c(b) if some unknown third party had heard the message.

See Dkt. #10 (Def.'s Mem.) at 12-13.  Defendant claimed that if the FDCPA is construed

to prohibit answering machine messages, the statute infringes on its First Amendment

rights.  See id. at 16.

On April 29, 2009, the Court granted the government's motion to intervene in this

matter for the sole purpose of defending the FDCPA against Defendant's constitutional

challenge.  See Dkt. #23.

## DISCUSSION

### A.      The Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.,

restricts what debt collectors can say and do when attempting to contact consumers who

allegedly owe debts.  Most provisions of the FDCPA target harassing or abusive tactics

by debt collectors, such as the publicizing of debts to employers and other associates,

false and misleading representations, and various other unfair practices.

Under § 1692d(6), debt collectors must provide "meaningful disclosure" of their

identities when placing telephone calls to consumers.  Section 1692e(11) further requires

that during its initial written or oral "communication" with a consumer, a debt collector

must "disclose . . . that the debt collector is attempting to collect a debt and that any

information obtained will be used for that purpose . . . ."  15 U.S.C. § 1692e(11).

Subsequent communications must also include a statement that the communications are

from a debt collector.  Id.

Section 1692c(b), entitled "Communication with third parties," states that, subject to certain exceptions not relevant here,

> a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). The FDCPA further defines "consumer" to include the alleged debtor's spouse, parents (if the consumer is a minor), guardian, executor, or administrator. See § 1692c(d).

The FDCPA provides for relief in the amount of any actual damages, plus statutory damages of up to $1,000 in an individual action or up to $500,000 or one percent of the debt collector's net worth in a class action. See 15 U.S.C. § 1692k.

**B.      The FDCPA applies even to vague messages**

The Court must first determine whether the FDCPA applies to the short, vague messages Defendant left on Plaintiff's answering machine. Defendant argues that the FDCPA does not apply to its messages because they were not harassing, abusive, false, or misleading. See Def.'s Mem. at 10-11. Defendant also argues that the messages were not "communications," as the FDCPA defines the term. See id. at 12. While the government does not intervene to address non-constitutional issues, these threshold questions must be answered prior to consideration of Defendant's constitutional claims. The United States, therefore, notes that courts regularly find that short, vague telephone messages from debt collectors must comply with the FDCPA.

Section 1692d generally proscribes all harassing, abusive, or oppressing conduct by debt collectors, and specifically outlaws the "the placement of telephone calls without meaningful disclosure of the caller's identity."  §§ 1692d, 1692d(6).  "Meaningful disclosure" requires that debt collector representatives accurately disclose the names of their employers or the entities on whose behalf the debt collectors are acting.  See Baker v. Allstate Financial Services, Inc., 554 F. Supp. 2d 945, 949 (D. Minn. 2008); Hosseinzadeh v. M.R.S. Associates, Inc., 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005); Joseph v. J.J. Mac Intyre Companies, L.L.C., 238 F. Supp. 2d 1158, 1167 (N.D. Cal. 2002); Wright v. Credit Bureau of Georgia, Inc., 548 F. Supp. 591, 597 on reconsideration 555 F. Supp. 1005 (N.D. Ga. 1983).  Given the plain language of the statute, Defendant's argument regarding the supposed immateriality of its failure to disclose its identity is unavailing.  Simply stating the names "Eva" or "Nadine Gluck," as JCC did in this case, would not constitute meaningful disclosure absent some showing that the consumer was readily familiar with those persons and who they represented. Defendant states that Plaintiff received prior written communications from JCC, but does not claim that Plaintiff knew or should have known that these particular callers represented JCC.[1]

_____

[1]  The FDCPA also generally requires that subsequent communications contain at least the disclosure that the communication is from the debt collector.  See Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643, 669 (S.D.N.Y. 2006) (disclosure must make nature of call apparent even to the least sophisticated consumer, who may not connect message with prior letter); cf. Hosseinzadeh, 387 F. Supp. 2d at 1116 n.17 (follow-up notices may not require disclosures where debtor already knows identity of the debt

Section 1692e(11), unlike § 1692d, applies only to "communications," which the FDCPA defines as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).  Defendant argues that the messages at issue conveyed no information regarding a debt and merely constituted *attempts* at communication.  While the messages did not include the word "debt" or specifically discuss the debt, they undoubtedly conveyed information regarding the debt. The messages told Plaintiff that she should call a particular phone number and speak to particular people.  They also conveyed some sense of urgency.  Courts around the country, including this Court, regularly find that entreaties to return calls – the opening salvos in an attempt to collect a debt – qualify as FDCPA "communications."  See, e.g., Baker, 554 F. Supp. 2d at 952; Knoll v. Allied Interstate, Inc., 502 F. Supp. 2d 943, 946 (D. Minn. 2007); Masciarelli v. Richard J. Boudreau & Assocs., LLC, 529 F. Supp. 2d 183, 185 (D. Mass. 2007); Hosseinzadeh v. M.R.S. Assocs., 387 F. Supp. 2d at 1116; Joseph v. J.J. Mac Intyre Companies, L.L.C., 281 F. Supp. 2d 1156, 1163 at n.3 (N.D. Cal. 2003); Leyse v. Corporate Collection Servs., Inc., Slip Op., 2006 WL 2708451, at *3-*5 (S.D.N.Y. Sept. 18, 2006); Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643, 655-56 (S.D.N.Y. 2006); West v. Nationwide Credit, 998 F. Supp. 642, 644

───────────────────────

collector).  Furthermore, it is well-established that the FDCPA "is reviewed utilizing the unsophisticated-consumer standard which is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder."  Strand v. Diversified Collection Service, Inc., 380 F.3d 316, 317 (8th Cir. 2004) (quotation omitted).

(W.D.N.C. 1998); but see Biggs v. Credit Collections, Inc., 2007 WL 4034997 at *4

(W.D. Okla., Nov. 15, 2007) (unpublished) (basic call-back requests do not constitute

FDCPA "communications").[2]

If the Court finds that the FDCPA applies to Defendant's requests, as seems likely,

there can be little question that the messages violated §§ 1692d(6) and 1692e(11).  Thus,

the Court will need to address Defendant's First Amendment challenge.

## C.      The FDCPA and recorded messages

Defendant claims that if the FDCPA mandates the disclosures discussed above yet

prohibits inadvertent contact with third parties, the statute effectively bans recorded

messages (and therefore, Defendant argues, violates the First Amendment) because debt

collectors cannot know for certain whether some third party will listen to the message.

As this Court has noted, however, the argument that a debt collector cannot disclose the

nature of its business on a recorded message for privacy reasons "has been repeatedly

rejected in the context of debt collector messages left on a consumer's home voicemail."

Baker, 554 F. Supp. 2d at 950.  Baker marked as significant the factual question of

whether the debt collector's messages were left on a residential machine (as in the present

case) or elsewhere.  See id.  While the Baker decision did not further delve into the details

_____

[2]  The FTC also stated in 1988 Staff Commentary to the FDCPA that
§ 1692(e)(11) would preclude messages similar to those in the present case.  See 53 Fed.
Reg. 50,107 ("A debt collector may not send the consumer a note saying only 'please call
me right away' unless there has been prior contact between the parties and the collector is
thus known to the consumer.").

of this issue, it cited with approval several cases – including Joseph v. J.J. Mac Intyre

Cos., L.L.C., 281 F. Supp. 2d 1156 (N.D. Cal. 2003), Hosseinzadeh v. M.R.S. Assocs.,

387 F. Supp. 2d 1104 (C.D. Cal. 2005), and Costa v. National Action Financial Services,

2007 WL 4526510 (E.D. Cal. 2007) (unpublished) – discussed below.

In Joseph, the court found that a debt collector should have made the FDCPA

disclosures in a recorded telephone message to a consumer's home despite the third-party

contact rule.  See Joseph, 281 F. Supp. 2d 1156 at 1163-64.  The debt collector argued

that provisions such as §§ 1692f(7)-(8), which prohibit references to alleged debts on

postcards and on the outsides of envelopes, should somehow apply to automated

telephone calls and thereby *prohibit* rather than *mandate* disclosure of the debt collector's

identity.  See id.  The court disagreed, based on the plain meaning of the FDCPA's

language.  See id. at 1164.

The Joseph court went on to acknowledge that a consumer's privacy conceivably

could be compromised if a third party answered the phone and heard an automated

message regarding someone else's debt.  However, the court found that possibility much

more remote than disclosures involving information "on the outside of an envelope sent

by mail for the world to see."  Id. at 1163.  The court found that, in enacting the third-

party communication prohibition, Congress was concerned with "privacy violations

resulting from deliberate disclosure of the debtor's status to third parties such as the

debtor's employer" and that the provisions cited by the defendant have "far less

applicability to phone calls made to the debtor's phone number at his or her residence ...."

Id. at 1164.  The court therefore found the calls governed by the disclosure requirements. Id.

The court in Hosseinzadeh faced a similar argument that the §§ 1692e(11) and 1692d(6) disclosure requirement was inconsistent with the § 1692c(b) prohibition on third-party contact.  See Hosseinzadeh, 387 F. Supp. 2d at 1110-11.  The Hosseinzadeh court discussed the "persuasive" reasoning from Joseph and also found that "compliance with these identification statutes does not run afoul of statutes prohibiting debt collectors from communicating with third parties."  Id. at 1112, n.11.

Similarly, in Costa, the court found the debt collector's "conflicting provisions" argument unpersuasive given that the defendant "left messages on plaintiff's *home* phone."  Id. (emphasis in original).   See Costa, 2007 WL 4526510 at *5.  As in Joseph, the court distinguished the facts before it with cases involving calls made to work numbers, which directly implicated congressional concerns about contacting employers. See id. at *5.[3]

The conclusions in cases such as Baker, Joseph, Hosseinzadeh, and Costa line up with the FTC's formal commentary on the FDCPA, which states that "[a] debt collector does not violate [§ 1692c(b)] when an eavesdropper overhears a conversation with the consumer, unless the debt collector has reason to anticipate the conversation will be

---

[3]  The Costa court noted in dicta that the debt collector's arguments "may carry weight in certain circumstances," but were inapplicable where the evidence showed that no third-party contact actually occurred.  Id.  No third-party contact is alleged in the present case.

overheard."  Federal Trade Commission Commentary on FDCPA, 53 Fed. Reg. 50097,

50104 (1988).  The FTC does not have power under the FDCPA to issue rules or

regulations that would receive <u>Chevron</u>-type deference.  However, the FTC is the

administrative agency charged with enforcing the FDCPA, and its interpretation should

be followed to the extent it is persuasive.  <u>See</u> <u>United States v. Mead Corp.,</u> 533 U.S. 218,

228 (2001); <u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000).[4]

---

[4]  As Defendant points out, the FTC stated in a "Workshop Report" earlier this
year that representatives of the debt collection industry have made the types of arguments
expressed in the present case regarding supposedly conflicting FDCPA requirements.
The FTC report noted that it would be "useful" for Congress to clarify debt collectors'
obligations when leaving voice mail messages.  FTC, <u>Collecting Consumer Debts: The
Challenges of Change</u>, at 49 (February 2009), available at http://www.ftc.gov/bcp/
workshops/debtcollection/dcwr.pdf.

However, the FTC also has at least implicitly endorsed the conclusions reached in
<u>Joseph</u> and <u>Hosseinzadeh</u>.  In 2006, the FTC responded by letter to a petition from a debt
collector requesting an advisory opinion on these issues.  Citing <u>Hosseinzadeh</u>, <u>Joseph</u>,
and other cases, the FTC stated that clear precedent supported the proposition that "a debt
collector leaving a voice mail message must reveal the name of his employer, even if the
name indicates that the message involves a debt" and that such recorded messages also
required the § 1692e(11) disclosures.  <u>See</u> Letter from Donald S. Clark, Secretary,
Federal Trade Commission, to Rozanne Andersen, ACA International (July 28, 2006),
available at http://www.ftc.gov/os/statutes/fdcpa/letters/
060728staffresponsesofadvisopinion_public.pdf.

FTC pronouncements have not been entirely consistent over the years.  An
unpublished, informal FTC staff letter written in 1977 opines that a debt collector may
"leave word" that a consumer should call back a "named individual" without also leaving
the name of the collection agency.  <u>See</u> Letter from Alan Refkin, Attorney, Division of
Special Statutes, Federal Trade Commission, to Leland W. Atteberry, Research Data, Inc.
at 4 (Dec. 30, 1977) (available at Robert J. Hobbs, Nat'l Consumer Law Center, Fair Debt
Collection (4th ed. Supp. 2003) (Fair Debt Collection Companion CD-ROM).  The author
of the letter explained that § 1692d(6) "is, in our opinion, intended to cover only actual
phone conversations."  <u>Id.</u>  Informal FTC staff letters can be persuasive, but have limited

The FTC's commentary, like the case law discussed above, is correct. Both the language of the statute and the congressional record focus on purposeful rather than incidental, unforeseen third-party contacts. Congress stated in § 1692c(b) that a debt collector "may not communicate with" third parties, using the verb "communicate" to suggest a deliberate act. § 1692c(d). The language "communicate *with*" also suggests a conscious conveying of information to the recipient. Id. (emphasis added). The legislative history of the FDCPA includes a congressional statement that "[o]ther than to obtain location information, a debt collector may not *contact* third persons, such as a consumer's friends, neighbors, relatives or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as loss of jobs." S. Rep. No. 95-382 (reprinted at 1977 U.S. Code & Admin. News 1695, 1699) (emphasis added). It is possible to imagine a factual scenario in which a debt collector attempts to purposefully contact third parties through recorded messages left at a residence. Generally, however, a message left on a consumer's own home number cannot be described as an attempt to contact or communicate with third parties any more than sending mail to a consumer's home address.[5]

_____

precedential value. See Udell v. Kansas Counselors, Inc., 313 F. Supp. 2d 1135, 1141-42 (D. Kan. 2004) (discussing a different section of this same FTC letter).

[5] Section 1692k of the statute indicates that intent is relevant only in determining the amount of liability. See § 1692k(b)(1), (2). However, § 1692(k) also provides for a "bona fide error" defense where a debt collector unintentionally violates the act "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." See § 1692k(c). If a debt collector maintains an appropriate procedure to

Admittedly, not all courts take the view expressed in <u>Joseph</u> and <u>Hosseinzadeh</u>. The <u>Foti</u> court speculated that debt collectors "may not be able to leave a pre-recorded message that complies with both § 1692e(11) and § 1692c(b)." <u>Foti</u>, 424 F. Supp. 2d at 659.  The <u>Foti</u> court explicitly stated that it need not actually answer that question, however, rendering these comments dicta.  <u>See</u> <u>id.</u> at 660, n.26.  A more recent case, <u>Berg v. Merchants Ass'n Collection Division, Inc.</u>, 586 F. Supp. 2d 1336 (S.D. Fla. 2008), involved a debt collector message that stated the name of the intended recipient, told any third parties listening in to disconnect, then proceeded to make the FDCPA disclosures and ask the consumer to call back.  <u>Berg</u>, 586 F. Supp. 2d at 1338-39.  The court, after noting both <u>Joseph</u> and <u>Foti</u>, found that even a message warning away third parties would not preclude a debt collector's liability under § 1692c(b) because the message did not tell the *consumer* to stop playing the message if other people were in the room.  <u>Berg</u>, 586 F. Supp. 2d at 1343-44.  The court also found that the debt collector's warning, if ignored by a third party, would not constitute prior consumer consent for such contacts.  <u>Id.</u>[6]

---

reasonably ensure that the numbers it calls are personal, home telephone numbers, any resulting potential third-party communication arguably would be either a) under the control of the consumer who chooses to share an answering machine, or b) a classic eavesdropper scenario.

[6] A few additional cases (including <u>Leyse</u>, which also was cited in the <u>Baker</u> decision) may be read to suggest that an answering machine message could lead to third-party contact liability, although none of them definitively address the issue.  <u>See</u> <u>Leyse v. Corporate Collection Services, Inc.</u>, Slip Op., 2006 WL 2708451, *5 (S.D.N.Y. Sept. 18, 2006) (citing <u>Foti</u> and finding debt collectors not necessarily entitled to most efficient means of communication if such methods risk violation of the law); <u>FTC v. Check Enforcement</u>, 2005 WL 1677480, *8 (D. N.J. July 15, 2005) (unpublished) (months of

While not every authority agrees whether incidental third-party contact via a home answering machine would necessarily violate the FDCPA, there can be no argument that debt collectors who choose to communicate through recorded messages <u>must</u> make the §§ 1692d and 1692e disclosures.  Nothing in the FDCPA or the cases interpreting it provides any reason to carve an exception out of the statutory language simply because debt collectors find it convenient or profitable to leave anonymous messages.  <u>See</u> <u>Berg</u>, 586 F. Supp. 2d at 1343 (court has "no obligation to harmonize different provisions of the FDCPA so that debt collectors may use an inherently risky method of communication."); <u>Foti</u>, 424 F. Supp. 2d at 659-60 (especially in the context of consumer protection statutes, "it does not seem unfair to require that one who goes deliberately close to an area of proscribed conduct shall take the risk that he may cross the line."); <u>Leyse v. Corporate Collection Services</u>, Slip Op., 2006 WL 2708451 at *5 (S.D.N.Y. Sept. 18, 2006) (if debt collector was "cornered between a rock and a hard place," it was "not because of any contradictory provisions of the FDCPA, but because the method they have selected to collect debts.").  Defendant, therefore, should have made the disclosures in this case.  As set out below, that requirement does not unconstitutionally infringe on Defendant's rights

---

abusive, harassing, and threatening calls to consumers' family members and similar messages left on family answering machines violated the FDCPA); <u>Udell v. Kan. Counselors, Inc.</u>, 313 F. Supp. 2d 1135, 1143-44 (D. Kan. 2004) (requiring debt collectors to leave messages rather than simply hang up upon receiving no answer "could lead to other unnecessary violations of the FDCPA").

irrespective of whether the Court takes a more or less expansive view of the third-party

contact prohibition.

**C.     The FDCPA does not violate the First Amendment**

Defendant first argues that the FDCPA creates a content-based restriction subject

to strict scrutiny because it "effectively prohibits use of the telephone" by debt collectors.

Def.'s Mem. at 17.  The statute does not prohibit all use of the telephone or even all

recorded messages, as previously discussed.  Regardless, Defendant does not explain why

even the limitations on recorded messages suggested by Berg would amount to content-

based restrictions.  The FDCPA does not "distinguish favored speech from disfavored

speech on the basis of the ideas or views expressed." Turner Broad. Sys., Inc. v. FCC,

512 U.S. 622, 643 (1994).  Instead, the challenged provisions forbid contact with

irrelevant third parties and require certain disclosures to the alleged debtor in private

communications.

Even if the FDCPA as a whole targets particular content, "the fact that a restriction

is content-based cannot alone trigger strict scrutiny." Trans Union Corp. v. FTC, 267

F.3d 1138, 1142 (D.C. Cir. 2001) (applying intermediate scrutiny to Fair Credit Reporting

Act in case involving consumer reporting agency selling lists of names and addresses).

The Supreme Court has "long recognized that not all speech is of equal First Amendment

importance.  It is speech on matters of public concern that is at the heart of the First

Amendment's protection." Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S.

749, 758-59 (1985) (quotations omitted).

14

The <u>Berg</u> court, citing <u>Dun & Bradstreet</u> and <u>Trans Union</u>, applied the same intermediate level of First Amendment scrutiny to the FDCPA.  <u>See</u> <u>Berg</u>, 586 F. Supp. 2d at 1344 ("[T]he information here is solely of interest to the speaker and its specific audience and is not a matter of public concern.").  Holding otherwise, the <u>Berg</u> court stated, "would lead to strict scrutiny analysis of any legislation requiring discretion in information disclosure by debt collectors, financial institutions, medical personnel, or others dealing with sensitive personal information." <u>Id.</u>  The <u>Berg</u> court did not specifically state that it was treating FDCPA communications as "commercial speech" in applying an intermediate scrutiny standard.  However, while debt collector voice mail messages are not the classic sort of advertisements most often featured in commercial speech cases, they represent the continuation of private, obviously commercial transactions involving no public concern.  <u>See</u> <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n</u>, 447 U.S. 557, 561 (1980) (defining commercial speech as "expression related solely to the economic interests of the speaker and its audience.") The same type of intermediate constitutional scrutiny given to other commercial speech restrictions would apply to the FDCPA.

The Supreme Court held in <u>Central Hudson</u> that, in examining commercial speech restrictions, a court must consider whether 1) the speech concerned lawful activity and was not misleading; 2) the asserted government interest is substantial; 3) the regulation directly serves that interest; and 4) the regulation is no more extensive than necessary to serve that interest.  <u>See</u> <u>Central Hudson</u>, 447 U.S. at 566.  The Supreme Court more

recently elaborated that when regulating commercial speech "[t]he Government is not required to employ the least restrictive means conceivable, but it must demonstrate narrow tailoring of the challenged regulation to the asserted interest – 'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" <u>Greater New Orleans Broad. Ass'n v. United States</u>, 527 U.S. 173, 188 (1999) (quoting <u>Board of Trustees of State Univ. of N.Y. v. Fox</u>, 492 U.S. 469, 480 (1989)).

Regarding the first factor, Congress determined that anonymous phone calls by debt collectors are <u>per se</u> "false or misleading representations" under § 1692e as well as "harassment or abuse" under § 1692d. <u>See</u> § 1692e (setting out various types of "false or misleading representations" prohibited under the FDCPA), § 1692d (detailing conduct "the natural consequence of which is to harass, oppress, or abuse"). Congress also declared that a violation of the FDCPA is, by definition, an "unfair or deceptive act or practice" in violation of the Federal Trade Commission Act. <u>See</u> 15 U.S.C. § 1692*l*(a). The Supreme Court has held that the government may "prevent the dissemination of commercial speech that is false, deceptive, or misleading." <u>Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio</u>, 471 U.S. 626, 638 (1985); <u>see also</u> <u>Central Hudson</u>, 447 U.S. at 566 (constitutional protection requires that commercial speech must at least "concern lawful activity and not be misleading."). Arguably, Defendant's anonymous messages enjoy no constitutional protection at all, and the Court need not inquire further.

As to the second factor, Congress sought through the FDCPA to help "eliminate abusive debt collection practices" that contribute to "personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692(e).  Congress noted in enacting the statute the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15 U.S.C. § 1692(a); see also Johnson v. Riddle, 305 F.3d 1107 at 1117 (10th Cir. 2002) (discussing purpose of the FDCPA); Pearce v. Rapid Check Collection, Inc., 738 F. Supp. 334, 337 (D. S.D. 1990) (noting legislative history of FDCPA); Fed. Trade Comm'n Annual Report 2009: Fair Debt Collection Practices Act at 4, avail. at http://www.ftc.gov/os/2009/02/P094804fdcpareport.pdf (describing the high level of consumer complaints the FTC continues to receive regarding the debt collection industry).  The government's interest in combating abusive debt collection practices was and is substantial.

Regarding the third factor, the FDCPA provisions at issue directly serve the government's interest in restricting abusive debt collection tactics and protecting consumer privacy.  The disclosure provisions require merely that debt collectors state who they are and why they are calling when they contact alleged debtors.  Defendant argues that "a prohibition against leaving a truthful, non-threatening message that merely invites a return phone call does not 'directly advance'" any legitimate government interest.  Def.'s Mem. at 18.  The FDCPA does not prohibit *truthful* messages, however; it prohibits *anonymous* messages.  Providing consumers with knowledge regarding the

17

nature of a debt collector's call at the outset of such contact reduces the likelihood that consumers will fall prey to the abusive practices Congress targeted.  A consumer fully aware of the situation, as the law intends, might decide not to immediately return a debt collector's message and instead deal with the debt collector through more formal, deliberate means.  A consumer also may decide to seek the advice or assistance of an attorney or some other trusted representative.  Likewise, the limits on unnecessary communications with third parties at §§ 1692b and 1692c(b) help to stop abusive tactics such as publicizing debts to employers and associates.  These FDCPA provisions directly serve the substantial governmental interest of curbing abusive practices.  See Florida Bar v. Went for It, 515 U.S. 618, 628 (1995) (government may justify commercial speech restrictions through history, anecdotes, or simple common sense).

Turning to the fourth factor, Congress narrowly tailored the FDCPA's restrictions to serve its legitimate interests.  As noted above, the Central Hudson standard does not demand the least restrictive measure that could possibly be conceived.  "The Supreme Court has made it clear that 'the 'least restrictive means' test has no role in the commercial speech context.'"  Missouri ex rel. Nixon v. American Blast Fax, Inc., 323 F.3d 649, 659-60 (8th Cir. 2003) (quoting Florida Bar, 515 U.S. at 632); see also 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 507 (1996) (state must establish a "reasonable fit" between restriction and legislative goal); Board of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989); Mainstream Mktg. Servs., Inc. v. FTC, 358 F.3d 1228, 1238 (10th Cir. 2004) ("All that is required is a proportional response.").  Relevant

18

to this inquiry is whether there exist "numerous and obvious less-burdensome alternatives" to the restrictions enacted by Congress.  Florida Bar, 515 U.S. at 632.

The FDCPA disclosure provisions require debt collectors to identify themselves and the reason for their communication when they call consumers.  A less-burdensome way of ensuring consumers receive that critical information is difficult to imagine.  Similarly, the third-party contact prohibition includes reasonable exceptions that allow debt collectors to locate individuals or to speak with designated representatives.  See §§ 1692b, 1692c(b).  Debt collectors may also communicate with third parties, and by extension leave messages where particular third parties might hear them, so long as they first obtain the consumer's consent.  See id.  Congress's response to the abusive debt collection tactics it sought to curtail was reasonable and proportional.

Defendant nevertheless argues that the relevant provisions must be considered overbroad if leaving a message can  lead to third-party contact liability.  Defendant likens the FDCPA to a few wide-ranging advertising restrictions struck down by the Supreme Court.  See Def.'s Mem. at 19-20.  Those cases, however, involved nearly complete bans on the communication of certain information to "prevent members of the public from making bad decisions with the information" or to advance a governmental interest that could be furthered without regulating speech.  See Missouri ex rel. Nixon, 323 F.3d at 659 (discussing Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 562 (2001), Thompson v. W. States Med. Ctr., 535 U.S. 357 (2002), and 44 Liquormart, 517 U.S. at 530-31.).  Even when construed as suggested by Berg, the FDCPA limits only the use of recorded

telephone messages.  As the <u>Berg</u> court stated, "[d]ebt collectors have several alternative channels of communication available to them, including live conversation via telephone, in person communication, and postal mail." <u>Berg</u>, 586 F. Supp. 2d at 1345; <u>see also</u> <u>Foti</u>, 424 F. Supp. 2d at 659 (debt collectors can "continue to use other means to collect, including calling and directly speaking with the consumer or sending appropriate letters."); <u>Leyse</u>, 2006 WL 2708451, *5 (debt collectors not entitled to use means of communications that lead to violations of the law "even if those means are the most economical or efficient."); <u>Missouri ex rel. Nixon</u>, 323 F.3d at 660 (ban on unsolicited fax advertising leaves open other communications channels); <u>Mainstream Mktg. Servs.</u>, 358 F.3d at 1243 (do-not-call rule allows communication by other means).[7]

Defendant claims that other methods of communication open to debt collectors do not represent realistic options because it can be difficult to reach consumers using live phone calls, in person, or by mail.  Defendant asserts that "collectors can and do send written communications, but because debtors frequently and typically ignore those communications, use of the telephone is necessary to reach many debtors."  Def.'s Mem. at 16.  Defendant also complains that many consumers use caller ID services to screen out

_____

[7]  If the Court were to find that construing the FDCPA to prohibit recorded messages creates a First Amendment concern, the doctrine of constitutional avoidance would suggest that, as in <u>Baker</u>, the <u>Joseph</u> interpretation of the third-party contact rule as it applies to home answering machines should instead be adopted.  "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."  <u>Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council</u>, 485 U.S. 568, 575 (1988).

live calls from debt collectors.  See id. at 17.  What Defendant implies but leaves unstated is that the short, vague, informal-sounding telephone messages it favors probably work best precisely because such anonymous recordings hide JCC's identity and the nature of its calls.  In other words, it could be argued that Defendant advocates not for the right to contact consumers, which it can do in a variety of ways, but for the right to trick them.

In short, the FDCPA is no more restrictive than necessary to curtail the specific sort of speech that contributes to the significant problems Congress sought to address. Defendant remains free to contact alleged debtors through a range of legal means, even if it finds some of those alternatives less efficient.  The Court should uphold the FDCPA against Defendant's First Amendment challenge.

## CONCLUSION

Defendant, a debt collector operating in the highly regulated field of debt collection, prefers not to reveal its identity in phone messages to the alleged debtors.  The FDCPA does not allow these anonymous, misleading telephone calls.  The statutory provisions governing these communications do not impermissibly encroach on Defendant's First Amendment rights.  For these reasons, the Court should reject the constitutional arguments contained in Defendant's Motion for Judgment on the Pleadings.

Dated: May 12, 2009                          Respectfully submitted,

                                             FRANK J. MAGILL
                                             United States Attorney
                                             District of Minnesota

21

MARY TRIPPLER
Assistant United States Attorney

TONY WEST
Assistant Attorney General
Civil Division

KENNETH L. JOST
Deputy Director
Office of Consumer Litigation

s/ Alan J. Phelps
ALAN J. PHELPS
Trial Attorney
Office of Consumer Litigation
United States Department of Justice
P.O. Box 875
Washington, DC 20044
Tel: (202) 307-6154
Fax: (202) 514-8742

Attorneys for the United States of
America