UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cynthia Mark, on behalf of herself and all
others similarly situated,

        Plaintiff,

        v.

J.C. Christensen & Associates, Inc.,

        Defendant,

United States of America,

        Intervenor.

MEMORANDUM OPINION
AND ORDER
Civil No. 09-100 ADM/SRN

___

Thomas J. Lyons, Jr., Esq., Consumer Justice Center, P.A., Vadnais Heights, MN; and Mark L. Vavreck, Esq., Martineau, Gonko & Vavreck, P.L.L.C., Minneapolis, MN, on behalf of Plaintiff.

Christopher R. Morris, Esq., and Michael A. Klutho, Esq., Bassford Remele, P.A., Minneapolis, MN, on behalf of Defendant.

Alan J. Phelps, Esq., United States Department of Justice, Washington, DC; and Mary Trippler, Esq., United States Attorney's Office, Minneapolis, MN on behalf of Intervenor.

___

## I. INTRODUCTION

On June 1, 2009, the undersigned United States District Judge heard oral argument on Defendant J.C. Christensen & Associates, Inc.'s ("JCC") Motion for Judgment on the Pleadings [Docket No. 6]. In her Complaint [Docket No. 1], Plaintiff Cynthia Mark ("Mark") asserts claims against JCC for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. For the reasons set forth below, JCC's Motion is denied.

## II. BACKGROUND

Mark, a Minnesota resident, is a "consumer," as that term is defined in the under the FDCPA. Compl. ¶ 4. JCC, a Minnesota corporation, is a collection agency and a "debt

collector," as defined in the FDCPA.  Id. ¶ 5.

Mark incurred a "consumer debt" in 2007 with the University of Minnesota Orthopedics and Hennepin Faculty Associates.  Id. ¶ 6.  The debt was later transferred to JCC for collection.  Id. ¶¶ 6-7.  Between June and October 2008, JCC mailed several debt collection notices to Mark and left numerous messages on her answering machine.  Id. ¶ 8.

Mark initiated this action in January 2009, alleging JCC's messages left on her answering machine violated the FDCPA because JCC failed to meaningfully disclose both its identity and that the calls were from a debt collector.  Id. ¶ 9.  Specifically, one of the messages was: "Hi Cindy, this is Eva, can you call me quick when you get this message.  My office number is 866-565-1399."  Id. ¶ 10.  Another message stated: "Cynthia[,] this is Nadine Gluck, please give me a call at my office I have a quick question for you here.  My number is 866-552-0363."  Id. ¶ 11.  And a third message stated: "Hi Cindy[,] this is Eva[.]  I am at my office tonight if you could give me a quick call at 866-565-1399.  Thank you."  Id. ¶ 12.

### III.  DISCUSSION

**A.     Motion for Judgment on the Pleadings Standard**

A motion under Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings is reviewed under the same standard used to evaluate a motion to dismiss under Rule 12(b)(6) of the Federal Rule of Civil Procedure.  Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be

2

resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**B.     Violations of the FDCPA**

Mark alleges that the messages left by JCC on her answering machine violated FDCPA provisions 15 U.S.C. §§ 1692d and 1692e because they failed to meaningfully disclose the identity of the caller and that the calls were from a debt collector. Compl. ¶ 9. Section 1692d(6) prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including, "the placement of telephone calls without meaningful disclosure of the caller's identity." Courts have construed this section as requiring a debt collector disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business. Baker v. Allstate Fin. Servs., Inc., 554 F. Supp. 2d 945, 949-50 (D. Minn. 2008) (collecting cases) (footnote omitted). Similarly, § 1692e(11) prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," including, "[t]he failure to disclose in the initial . . . communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, *and the failure to disclose in subsequent communications that the communication is from a debt collector*." (emphasis added).

JCC argues that the messages do not violate the FDCPA for three reasons. First, JCC argues that the messages do not constitute "communications" under the FDCPA because the

3

messages are merely "attempts at communication" and therefore are not subject to the FDCPA disclosure requirements.  Def.'s Mem. in Supp. of Mot. for J. on Pleadings [Docket No. 10] at 2, 12-13.  Second, JCC argues that, even if the messages are "communications," they were not harassing, abusive, false, deceptive, or misleading and, thus, do not violate the FDCPA.  Id. at 11.  Lastly, JCC argues that even if the messages are deemed to be deceptive or misleading, the deceptive or misleading aspect of the messages was not "material."  Id.

**1.    Communication**

The FDCPA defines "communication" as meaning "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).  JCC argues that its messages "did not 'communicate' anything regarding the debt; rather, the collector simply asked for a call back and gave her name, just as she would have done had a live person (other than [Mark]) answered the phone."  Def.'s Mem. in Supp. of Mot. for J. on Pleadings at 12-13.  As an initial matter, JCC's argument that the messages do not constitute "communication" affects only the claim under § 1692e(11).  Section 1692d(6) does not use the term "communication" and refers only to "conduct," including "the placement of telephone calls without meaningful disclosure of the caller's identity."  Thus, the "telephone calls" do not necessarily need to be "communications" to support a claim for violations of § 1692d(6) or other provisions of the FDCPA.  See Leyse v. Corporate Collection Servs., Inc., No. 03 Civ. 8491, 2006 WL 2708451, at *4 (S.D.N.Y. Sept. 18, 2006) ("[B]ecause Section 1692d(6) prohibits 'conduct', not 'communications' per se, the definition of 'communication' is irrelevant."); Muir v. Navy Fed. Credit Union, 529 F.3d 1100, 1106 (D.C. Cir. 2008) (recognizing that unlike § 1692e(11), § 1692d "do[es] not expressly require communication to establish liability.").

4

In support of its argument that the messages left on Mark's answering machine do not constitute "communications" under § 1692a(2), JCC cites Biggs v. Credit Collections, Inc., No. CIV-07-0053-F, 2007 WL 4034997 (W.D. Okla. Nov. 15, 2007). In Biggs, the court held that a debt collector's voice messages were not "communications" because they did not relay any information regarding the debt. Id. at *4. The greater weight of authority, however, holds that a voicemail or answering machine message is indeed a "communication" under § 1692a(2). See, e.g., Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643, 654-55 (S.D.N.Y. 2006). (rejecting a debt collector's assertion that its voicemail message was not a communication because it did not contain information regarding a debt); Baker, 554 F. Supp. 2d at 952 (stating that "voicemails are communications covered by [Section 1692e(11)]"); Edwards v. Niagara Credit Solutions, Inc., 586 F. Supp. 2d 1346, 1359 (N.D. Ga. 2008) ("The majority of courts that have addressed this issue have concluded that messages from a debt collector left on a consumer's voicemail or answering machine requesting that the consumer call a phone number regarding an 'important matter' (or similar such language) may be considered 'communications' under the FDCPA . . . .").

In Foti, the court held that the following recorded telephone message constituted a "communication" under § 1692a(2): "Good day, we are calling from NCO Financial Systems regarding a personal business matter that requires your immediate attention. Please call back 1-866-701-1275 once again please call back, toll-free, 1-866-701-1275, this is not a solicitation." 424 F. Supp. 2d at 648, 654-55. In so holding, the court first recognized that, consistent with Congress's intent, the FDCPA "should be broadly construed." Id. at 655. The Foti court further reasoned that although the message technically did not convey any specific information about

5

the debt, "it is difficult to imagine how the voicemail message is not a communication under the FDCPA" when it "clearly provided some information, even if indirectly, to the intended recipient" and the "obvious purpose of the message was to provide the [consumer] with enough information to entice a return call." Id. at 655-56.

To date, no other court has adopted the Biggs court's conclusion that voicemail messages do not constitute "communications" under the FDCPA. To the contrary, at least one court has explicitly rejected the "narrow interpretation" of "communication" adopted in Biggs, criticizing the analysis as failing to recognize the legislative intent of the FDCPA, "which calls for a broad construction of [the FDCPA's] terms in favor of the consumer." See Ramirez v. Apex Fin. Mgmt., LLC, 567 F. Supp. 2d 1035, 1041-42 (N.D. Ill. 2008). The Court accepts the rationale of Foti and Ramirez and therefore holds that the messages left by JCC on Mark's answering machine are "communications" under the FDCPA.

### 2. Harassing, Abusive, False, Deceptive, or Misleading Conduct

As its second argument, JCC contends that even if the messages are "communications," they did not violate § 1692d or § 1692e. In evaluating whether a debt collector's conduct violated the prohibitions in § 1692d and § 1692e, courts view the debt collector's conduct "'through the eyes of the unsophisticated consumer.'" See Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001) (quoting Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000)). The "unsophisticated consumer" test is "designed to protect consumers of below average sophistication or intelligence, but [it] also contain[s] an objective element of reasonableness . . . that prevents liability for bizarre or idiosyncratic interpretations of collection notices." Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002) (quotations

omitted).

JCC argues that the messages cannot reasonably be viewed as harassing or abusive under § 1692d or false, deceptive, or misleading under § 1692e. Def.'s Reply Mem. at 8-9 [Docket No. 26]. This same argument was rejected in Edwards:

> Defendant argues that, despite the failure of its callers to identify themselves as calling on behalf of Niagara, the messages did not violate . . . § 1692d(6) because the messages did not harass, oppress, or abuse the Plaintiff. That section, however, *defines* the specific conduct deemed to harass, oppress, or abuse to include "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Based on a plain reading of the statute, the Court concludes that when a debt collector places a telephone call to a consumer without meaningful disclosure of the identify of the caller, it is not required that the telephone calls *also* be considered harassing, oppressing or abusive to the consumer in order to be a violation of . . . § 1692d(6).

586 F. Supp. 2d at 1360. The reasoning is equally applicable to § 1692e; because the statute specifically includes as prohibited conduct the failure to disclose in subsequent communication that the communication is from a debt collector, a plaintiff "is not required to present additional evidence that the conduct is also 'false, deceptive, or misleading.'" Id. at 1361.

**3.    Materiality**

JCC's third argument, which appears to be directed only at Mark's § 1692e claim, is that even if the messages could be viewed as deceptive or misleading "in some technical sense, there was not material misrepresentation." Def.'s Mem. in Supp. of Mot. for J. on Pleadings at 11. In support, JCC cites Hahn v. Triumph Partnerships LLC, in which the court held that a plaintiff claiming a violation of § 1692e had to show that the statement alleged to be false or misleading was a material statement. 557 F.3d 755, 757-58 (7th Cir. 2009). "A statement cannot," the court explained, "mislead unless it is material, so a false but non-material statement is not actionable."

7

Id. at 758. But as explained previously, the statute specifically lists the failure to disclose that the communication is from a debt collector as being false, deceptive, or misleading and a violation of § 1692e. It necessarily follows that because the failure to disclose is specifically listed as being a violation of the FDCPA, that such a failure to disclose is material.

In her Complaint, Mark alleges that JCC left answering machine messages that failed to meaningfully disclose the identify of the caller and that the call was from a debt collector regarding a debt.[1] These allegations are sufficient to state a claim under the FDCPA. See Baker, 554 F. Supp. 2d at 949-50; Ostrander v. Accelerated Receivables, No. 07-CV-827C, 2009 WL 909646, at *6 (W.D.N.Y. Mar. 31, 2009) (holding that "[a] telephone message that merely states the name of a person to contact and a telephone number at which to reach that person does not provide meaningful disclosure" and states a claim under both § 1692d(6) and § 1692e(11)).

C.     **First Amendment Arguments**

JCC's final argument is that if the FDCPA were construed to render the messages left on Mark's answering machine as being violative of the FDCPA, then the FDCPA is unconstitutional because it restricts JCC's freedom of speech.  Def.'s Reply Mem. at 9-10. JCC contends that such a construction creates a conflict in which the FDCPA requires debt collectors to disclose their identities in telephone messages while at the same time it prohibits debt collectors from disclosing the existence of a debt to third parties. JCC explains that when leaving a voicemail or answering machine message, there is a concern that someone other than

---

[1] There is no indication that Mark was familiar with the individual callers, "Eva" and "Nadine Gluck," such that she would understand from their names alone that the call was from a debt collection company.

the consumer will hear the message.  Thus, debt collectors are faced with a "Hobson's choice"[2] of, on the one hand, leaving a "short, non-offensive message" that fails to make the necessary disclosures and thereby exposes the debt collector to claimed violations of § 1692d and § 1692e or, alternatively, leaving a message that makes the necessary disclosures but in so doing runs the risk that a third party will hear the message, thus exposing the debt collector to claimed violations of the prohibition in 15 U.S.C. § 1692c(b) on third party disclosures.[3]  Def.'s Mem. in Supp. of Mot. for J. on Pleadings at 8-10.  JCC concludes, therefore, that the FDCPA violates the First Amendment to the United States Constitution because it "effectively prevents collection agencies from leaving phone messages and thereby for all practical purposes prevents agencies from making any live contact with many customers."  Id. at 17.

   **1.      The "Claimed" Dilemma**

---

[2] The predicament JCC claims the FDCPA creates is not technically a "Hobson's choice."  A "Hobson's choice" describes a situation presenting an individual with "the option of taking the one thing offered or nothing."  III The Oxford English Dictionary 151 (2d ed. 1989).  The historical origin of the term "Hobson's choice" can be found at L.N. Florence, Origin of "Hobson's Choice", N.Y. Times, June 8, 1898, available at http://query.nytimes.com/mem/archive-free/pdf?_r=1&res=9B03E0DD1F3DE433A2575BC0A9609C94699ED7CF.  JCC's claimed predicament is more aptly described as a "Morton's Fork."  Named after John Morton—the Archbishop of Canterbury and minister of Henry VII, who supposedly employed a "method of levying forced loans by arguing that those who were obviously rich could afford to pay, and those who lived frugally must have amassed savings"—the term refers to "a practical dilemma, *esp.* one in which both the choices or alternatives available disadvantage or discredit the chooser."  IX The Oxford English Dictionary 1106 (2d ed. 1989).  A much more familiar, baby-boomeresque description for the claimed dilemma would be a "Catch 22," which refers to a "law or regulation containing provisions which are mutually frustrating."  II The Oxford English Dictionary 973 (2d ed. 1989).  The term, of course, derives its name from Joseph Heller's 1961 novel, Catch-22. Id.

[3] Section 1692c(b) provides, in pertinent part, that "without the prior consent of the consumer given directly to the debt collector, . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer . . . ."

The argument that debt collectors are "impaled on Morton's Fork" when they leave telephone messages because they are forced to choose between violating § 1692d(6) and § 1692e(11) or violating § 1692c(b) has been argued by debt collectors in other cases and rejected. Faced with a similar argument, the court in Joseph v. J.J. Mac Intyre Cos., LLC, noted that Congress's concern in enacting the provisions of the FDCPA prohibiting third party disclosures was about "deliberate disclosure of the [consumer]'s status to third parties," which had "far less applicability to phone calls made to the [consumer]'s phone number at his or her residence." 281 F. Supp. 2d 1156, 1164 (N.D. Cal. 2003); accord Baker, 554 F. Supp. 2d at 950, Hosseinzadeh v. M.R.S. Assocs., Inc., 387 F. Supp. 2d 1104, 1112, n.11 (C.D. Cal. 2005); Costa v. Nat'l Action Fin. Servs., No. CIV S-05-2084, 2007 WL 4526510, at *5 (E.D. Cal. Dec. 19, 2007). Similarly, in Leyse, a defendant argued that the FDCPA places debt collectors between "a rock and a hard place" in the sense that debt collectors "must choose between violating Section 1692d(6)'s meaningful disclosure requirement by leaving . . . messages which do not clearly identify themselves, and violating Section 1692c(b)'s privacy requirement by identifying themselves to third parties." 2006 WL 2708451, at *4. The debt collector further argued that leaving the recorded messages on the consumer's home telephone number did not cure the dilemma because the possibility still existed that a spouse, relative, or roommate would listen to the message. Id. The court was not persuaded:

> The premise of [the defendant's] argument is that they are expressly entitled to use pre-recorded messages for debt collection. However, just because a debt collector is permitted to continue to attempt to collect the debt does not entitle the collector to use any means, even if those means are the most economical or efficient. . . . The Court has no authority to carve an exception out of the statute just so [the defendant] may use the technology they have deemed most efficient. . . . [The defendant] has been cornered between a rock and a hard

>     place, not because of any contradictory provisions of the FDCPA, but
>     because the method they have selected to collect debts has put them
>     there.

Id. at *5 (citations and quotations omitted); see also Berg v. Merchants Assoc. Collection Div., Inc., 586 F. Supp. 2d 1336, 1344 (S.D. Fl. 2008) (calling automated telephone messages an "inherently risky method of communication" and noting that debt collectors could use such a mode of communication at their peril).

The risk of disclosure to third parties here was minimal and comes as a result of JCC's selection of what it views as being the easiest or most cost-effective method of attempting to collect debts. There is no indication that others shared Mark's answering machine and, more importantly, no allegation that JCC, when it left the messages, deliberately intended that they be heard by third parties. The FDCPA was intended to protect against deliberate disclosures to third parties as a method of embarrassing the consumer, see Joseph, 281 F. Supp. 2d at 1164, not to protect against the risk of an inadvertent disclosure that could occur if another person unintentionally overheard the messages left on Mark's answering machine. Thus, JCC's argument that it faced a significant risk of exposure to liability under § 1692c(b) had it made the required disclosures in the messages left on Mark's answering machine is rejected.[4]

But even accepting for the sake of argument JCC's claim that the FDCPA presents debt

---

[4] JCC stresses that the messages it left on Mark's answering machine were benign, resulted in no harm to the consumer, and were "designed to avoid third party disclosures." Def.'s Reply Mem. at 9. For these reasons, JCC insists, it should be insulated from liability under the FDCPA. JCC cites no authority for what it apparently perceives to be the greater evil as between third party disclosures and telephone calls that fail to provide the required meaningful disclosures. Furthermore, the argument that the FDCPA, as enacted, unfairly burdens the collection industry and targets conduct that, in JCC's view, causes minimal harm to consumers, is a policy consideration more appropriately directed to the legislative branch of government.

collectors with an unavoidable dilemma that restricts First Amendment rights, the restrictions are constitutional.

## 2. Constitutional Scrutiny

JCC argues that the collective effect of FDCPA's regulations pertaining to the contacting of consumers by telephone in connection with the collection of debts is a content-based restriction on free speech, which can be constitutional only if it survives strict scrutiny. Def.'s Mem. in Supp. of Mot. for J. on Pleadings at 17. Generally, a content-based restriction on non-commercial speech is subject to strict scrutiny, whereas a content-based restriction on commercial speech is subject to the four-prong test set forth in Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 566 (1980). See Clear Channel Outdoor, Inc. v. City of St. Paul, No. Civ.02-1060, 2003 WL 21857830, at *5 (D. Minn. Aug. 4, 2003). Under Central Hudson,

> [courts] ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment. If the speech concerns lawful activity and is not misleading, however, [courts] next ask whether the asserted governmental interest is substantial. If it is, then [courts] determine whether the regulation directly advances the governmental interest asserted, and, finally, whether it is not more extensive than is necessary to serve that interest. Each of these latter three inquiries must be answered in the affirmative for the regulation to be found constitutional.

Thompson v. W. States Med. Ctr., 535 U.S. 357, 367 (2002) (quotations omitted).

JCC does not dispute that the activity regulated by the relevant provisions of the FDCPA—i.e., debt collectors contacting consumers by telephone in connection with the collection of a debt—is commercial speech. Def.'s Mem. in Supp. of Mot. for J. on Pleadings at 17-18. Thus, even if the FDCPA is a content-based restriction, its constitutionality is evaluated

12

under the Central Hudson test.  See Thompson, 535 U.S. at 367-68 (2002) (recognizing that "several Members of the Court have expressed doubts about the Central Hudson analysis and whether it should apply in particular cases," but finding "no need in this case to break new ground"); Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 554-55 (2001) (acknowledging that some disagreement exists about whether to apply strict scrutiny to commercial speech cases but holding that the intermediate scrutiny test of Central Hudson is still the appropriate test to apply);  Missouri ex rel. Nixon v. Am. Blast Fax, Inc., 323 F.3d 649, 653 (8th Cir. 2003) ("[T]he Supreme Court has recently indicated that Central Hudson remains the test for the constitutionality of a restriction on commercial speech.").

JCC also argues that if debt collectors leave messages that include the disclosures, they might violate the third-party disclosure prohibition; if they leave messages without the disclosures, they violate the requirement on giving such disclosures; and if they leave no message, opting instead to call back later in the hope of reaching a live person, they run the risk of violating the prohibition on repeated calling in 15 U.S.C. § 1692d(5).  Thus, JCC contends, a debt collector's only safe practice is simply not to use telephone messaging at all.  In this regard, JCC seems to be suggesting that the FDCPA be subjected to some different test of constitutionality on the ground that it has the effect of creating a total ban on a medium of communication, telephones.  See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 526 (1981) (Brennan, J., concurring in the judgment) ("The characterization of the San Diego regulation as a total ban of a medium of communication has more than semantic implications, for it suggests a First Amendment analysis quite different from the plurality's.").  However, § 1692d(5)'s proscription on calling repeatedly applies only to repeatedly calling "with *intent to*

13

*annoy, abuse, or harass* any person at the called number." (emphasis added). Thus, JCC would not violate § 1692d(5) if its intent was merely to engage the consumer in a live conversation. Nevertheless, even if the FDCPA created a total ban on telephone messaging, the test of constitutionality would be essentially the same as the Central Hudson test. See Metromedia, 453 U.S. at 528 (Brennan, J., concurring in the judgment) (recommending that a total ban is constitutional if a "sufficiently *substantial* governmental interest is *directly* furthered by the total ban, and that any more *narrowly drawn* restriction . . . would promote less well the achievement of that goal") (emphasis added).

Intervenor United States of America ("the United States") argues that Congress has already determined that telephone calls by debt collectors that fail to include the required disclosures are "per se 'false of misleading representations' under § 1692e as well as 'harassment or abuse' under § 1692d." Intervenor's Mem. in Def. of the Constitutionality of the FDCPA (Docket No. 24) at 16. The United States concludes, therefore, that the messages JCC left on Mark's answering machine fail the threshold question under Central Hudson and are not entitled to any protection under the First Amendment.

The court in Bioganic Safety Brands, Inc. v. Ament, 174 F. Supp. 2d 1168 (D. Colo. 2001), encountered a similar argument. In Bioganic, a manufacturer of insect repellent products challenged a Colorado statute that declared it unlawful "to make representations through any media as to the safety of any pesticide or device" as an unconstitutional infringement of commercial speech. Id. at 1172 (quotation omitted). The manufacturer's pesticide was also subject to a federal law that, like the Colorado statute, prohibited "'[c]laims as to the safety of the pesticide or its ingredients, including statements such as "safe."'" Id. (quoting 40 C.F. R. §

156.10(a)(5)(ix)). Further, the federal law specifically listed claims regarding safety in labeling as an example of "[f]alse or misleading statements." 40 C.F.R. § 156.10(a)(5). In defending the constitutionality of the Colorado statute,[5] the state argued that under Central Hudson, the manufacturer's commercial speech of making safety claims was not entitled to First Amendment protection "'because both Congress and the General Assembly of the State of Colorado have determined that, as a matter of law, claims of safety on pesticide labels are inherently misleading.'" Bioganic, 174 F. Supp. 2d at 1180. The court responded:

> Whether speech is "inherently misleading[]" . . . is a determination for the court, not the legislature to make. If a legislature could place speech outside of the First Amendment protection by simply declaring the speech "inherently misleading," the First Amendment . . . would be subject to de facto modification by state legislatures. . . . It is not enough for the legislature to claim that speech is "inherently misleading." The restricted speech must actually be inherently misleading.

Id.

Here, like in Bioganic, Congress has specifically declared the prohibited activity of failing to make the necessary disclosures as inherently misleading. Such a declaration is not, however, dispositive of whether the restriction is entitled to First Amendment protection. To hold otherwise would permit Congress to shield restrictions on commercial speech from First Amendment scrutiny by simply declaring the speech subject to the restrictions as being inherently misleading. But, as the court in Bioganic explained, whether speech is inherently misleading, meaning that it is incapable of being presented in a way that is not deceptive, is a question for the Court. Id. at 1180-81. Although a telephone call that fails to make the required

---

[5] The plaintiff in Bioganic expressly declined to challenged the constitutionality of the federal law.

15

disclosures has the potential to be misleading, the Court does not believe (nor do Plaintiffs or the United States argue) that it is incapable of being presented in a way that does not deceive. Because a telephone call that omits the required disclosure is only potentially misleading, it is not outside of the protection of the First Amendment and the FDCPA's restrictions on such telephone calls are constitutional only if the remaining steps of the Central Hudson analysis are met. See Parker v. Ky. Bd. of Dentistry, 818 F.2d 504, 509 (6th Cir. 1987) (citing In re R.M.J., 455 U.S. 191, 203 (1982)).

With regard to the second step of Central Hudson, the asserted governmental interest is to eliminate the use of abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. § 1692(a), (e). Congress noted that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Id. § 1692(a). Plaintiffs and the United States argue—and JCC does not dispute—that these governmental interests are substantial.

Under the third step in the Central Hudson analysis, the regulation on commercial speech must directly advance the asserted governmental interests. 447 U.S. at 566. Plaintiffs and the United States argue that the FDCPA provisions at issue directly serve the substantial governmental interests noted above. The argument is that prohibiting debt collectors from leaving anonymous messages directly advances the governmental interests because allowing a debt collector to leave such messages could result in consumers being tricked into calling back and being forced to communicate with the debt collector, which could be an abusive practice since some consumers prefer written contact or to have an attorney or other representative engage in discussions with the debt collector on the consumer's behalf. JCC disagrees, arguing

that "a prohibition against leaving a truthful, non-threatening message that merely invites a return phone call does not 'directly advance'" the governmental interest of protecting consumers from abusive debt collection practices. But JCC's assertion does not rebut the determination of Congress that messages failing to make the required disclosures are potentially abusive, deceptive, or misleading, without regard to any further showing that the message in a particular case included statements that could be viewed as untruthful or threatening. To the extent that JCC argues the asserted governmental interest is not directly advanced by prohibiting the specific messages that it left on Mark's answering machine, the Supreme Court has held the question whether the regulation directly advances the governmental interest "cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as applied to a single person or entity." United States v. Edge Broad. Co., 509 U.S. 418, 427 (1993). In other words, "[e]ven if there were no advancement as applied in that manner—in this case, as applied to [JCC]—there would remain the matter of the regulation's general application to others—in this case, to all other [debt collectors] . . . ." Id.

 Lastly, the fourth step of Central Hudson requires that a regulation must be no more extensive than is necessary to serve the asserted governmental interest. 447 U.S. at 566. Stated differently, there must be a "fit between the restriction and the government interest that is not necessarily perfect, but reasonable." Edge Broad., 509 U.S. at 429. The means need not be the least restrictive in the context of commercial speech, and courts are to examine whether "numerous and obvious less-burdensome alternatives" exist. Florida Bar v. Went for It, Inc., 515

U.S. 618, 633 (1995). JCC has not advanced a persuasive argument[6] that there exists alternatives to the disclosure requirements that are reasonable and less burdensome options, and none are apparent to the Court. Requiring a debt collector to identify itself as such appears to be a direct and narrow method of preventing consumers from being tricked into communicating with debt collectors regarding a debt. Furthermore, debt collectors have several forms of communication available to them in their efforts to collect a debt, including live conversation over the telephone, in person communication, and the mail. The FDCPA is no more extensive than necessary to achieve the asserted governmental interests of preventing abusive or deceptive debt collection practices such as anonymous telephone calls.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant JCC's Motion for Judgment on the Pleadings [Docket No. 6] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 4, 2009.

---

[6] As discussed previously, JCC's argument that the FDCPA effectively eliminates telephones as a means of communication for debt collectors is not persuasive.